# United States District Court
## District of New Jersey

| | |
|---|---|
| UNITED STATES OF AMERICA | : **CRIMINAL COMPLAINT** |
| v. | : |
| ALEXANDER VARSHAVSKY and NEW YORK MOTORS CORP. | Magistrate No. 13-7363 : |

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From on or about January 1, 2008 through the present, in the District of New Jersey and elsewhere, defendants did:

while having a financial interest in, and signature or other authority over, one or more financial accounts in a foreign country within the meaning of 31 U.S.C. § 5314 and 31 C.F.R. § 1010.350 (formerly 31 C.F.R. § 103.24), knowingly and willfully failing to file the reports required by 31 U.S.C. § 5314 and 31 C.F.R. § 1010.350 as part of a pattern of illegal activity involving more than $100,000 in a 12-month period.

In violation of Title 31, United States Code, Sections 5314 and 5322(b).

I further state that I am a Special Agent of Homeland Security Investigations, Immigration and Customs Enforcement, and that this complaint is based on the following facts:

SEE ATTACHMENT A

*Deborah Hartman*
Deborah Hartman
Special Agent
Homeland Security Investigations
Immigration and Customs Enforcement

Sworn to before me and subscribed in my presence,

December 23, 2013                     at     Newark, New Jersey
Date                                         City and State

Honorable Cathy Waldor
United States Magistrate Judge
Name & Title of Judicial Officer              Signature of Judicial Officer

1

ATTACHMENT A

     I, Deborah Hartman, am a Special Agent with Homeland Security Investigations, Immigration and Customs Enforcement. Based upon my investigation and information provided to me by other individuals involved in this investigation, I have knowledge of the following facts:

     1.    Defendant New York Motors Corporation was founded by defendant Alexander Varshavsky and another individual and was incorporated in New Jersey in October 1996.

     2.    At all relevant times, defendant Varshavsky and another individual have been joint owners of defendant New York Motors, and defendant New York Motors has been the sole owner of Avilon Group and New York Motors Moscow ZAO Avilon Auto Group (collectively "Avilon"), a company that operates Ford and Mercedes dealerships in Moscow, Russia.

     3.    At all relevant times, defendant Varshavsky was a United States citizen residing abroad, specifically in Russia.

     4.    In May 2009, Ernst & Young prepared a packet of information for Avilon. According to the U.S. accountant for defendant New York Motors, the company that owned Avilon, defendant Varshavsky was privy to the information contained in that packet.

     5.    In a section of the packet subtitled "Historical U.S. Tax Risks and Exposures," Ernst & Young opined that because "Russian and other non-U.S. bank accounts (personal and business accounts over which U.S. individuals have signature authority) have not been reported by U.S. individuals to U.S. tax authorities," there was a "risk of imposition of penalties." In addition, the following statements appeared in a section of the packet entitled, in bold print, **"Reporting of Russian and other non-U.S. bank accounts"**:

- We understand that Russian and other non-U.S. bank accounts (personal or business) are not reported in the U.S. by the U.S. individuals. We also understand that at least one of the owners has a signature authority over a business bank account in Russia and both of them have personal bank accounts in Russia.

- Under current law, U.S. persons with a financial interest in *or* signatory authority over a foreign bank, brokerage, or other financial account valued over $10,000 at any time during a year must file Treasury Form TD F 90-22.1, "Report of Foreign Bank and Financial Accounts," ("FBAR" report) with US tax authorities by June 30 of the following year.

> ➢ Under current law, failure to file a required TD F 90-22.1 or provide complete and accurate information may result in the imposition of up to **$10,000** in penalties, unless both (1) the violation was due to reasonable cause; and (2) income from the account was properly reported on the relevant income tax return. For willful violations, the penalty is the greater of **$100,000** or 50% of the balance of the account.   Criminal penalties for failure to file may also apply.   [Emphasis in original.]

6.     No FBARs have been filed by or for defendant New York Motors, defendant Alexander Varshavsky, or Avilon.

7.     During calendar years 2008 through 2012, defendant Varshavsky, defendant New York Motors, and Avilon have had financial interests in, controlled, and had signature authority over foreign bank accounts.

8.     For example, on March 18, 2008, a CitiBank account in the name of New York Motors received a $30,000,000 wire transfer from a bank account in Russia held in the name of New York Motors.   It follows that defendant New York Motors, and therefore defendant Varshavsky, controlled at least $30,000,000 held in a foreign account in 2008.

9.     In 2009, for the purpose of purchasing a Bombardier jet, defendant Varshavsky instructed an employee of Avilon in Moscow to wire $7.2 million from Russian bank accounts to the United States bank accounts of defendant New York Motors and another entity defendant Varshavsky controlled. Furthermore, when that jet was sold in April 2010, the proceeds of the sale—a total of $22 million—were wire-transferred to Avilon's account in Russia. Accordingly, in 2009 defendant Varshavsky controlled at least $7.2 million held in a foreign account, and in 2010 he controlled at least $22 million held in a foreign account.

10.    Furthermore, on September 22, 2010, a U.S. bank account was the beneficiary of a $5,000,000 wire transfer from a bank account held at a bank in Moscow in the name of defendant Alexander Varshavsky.   It follows that in 2010 defendant Varshavsky maintained a financial interest in at least $5,000,000 held in a foreign bank account.

11.    In January 2011, agents observed defendant Varshavsky enter several buildings in the Central Park area with a real estate agent, including 25 Columbus Circle, New York, New York.   In June 2011 defendant Varshavsky purchased an apartment located at that address for approximately $20.5 million in cash.   This purchase was made under the corporate name Prime International Management Group.   According to documents produced by the

titling agency utilized for this real estate transaction, defendant Varshavsky was the sole signatory for all transactions conducted by Prime International Management Group relating to this purchase.

12.  Between August 2011 and October 2012, a Provident Bank account in the name of European Realty, a company owned by defendant Varshavsky and another individual, transferred approximately $750,000 to an account in the name of Prime International Management Group held at PNC Bank. Defendant Varshavsky controlled both accounts. The European Realty account was funded almost exclusively by wire transfers from an account held in the name of Avilon in Russia and an account held in the name of Avilon Holdings in Cyprus. Between August 2011 and October 2012, European Realty received approximately $24.3 million in wire transfers from these two foreign-held accounts. It follows that defendant Varshavsky controlled approximately $24.3 million in foreign bank accounts in 2011 and 2012.

13.  In summary, there is probable cause to believe that defendants Alexander Varshavsky and New York Motors maintained financial interests in and signature or other authority over one or more foreign financial accounts with an aggregate value of $10,000 or more in a calendar year.

14.  Furthermore, there is probable cause to believe that defendants Varshavsky and New York Motors Corporation willfully failed to file reports required by Title 31, United States Code, Section 5314, and the regulations promulgated thereunder, as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, in violation of Title 31, United States Code, Section 5322(b).